**ROCK HILL ASPHALT & CONSTRUCTION COMPANY, Respondent,**

v.

**STATE HIGHWAY COMMISSION OF MISSOURI, Appellant.**

**No. 54055.**

Supreme Court of Missouri, En Banc.

Feb. 9, 1970.

Charles H. Howard, Hendren & Andrae, Jefferson City, for plaintiff-respondent.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for defendant-appellant.

TOM J. STUBBS, Special Judge.

Defendant-appellant prosecutes this appeal from a final judgment of the Circuit Court of Cole County, Missouri, in favor of plaintiff-respondent in the amount of $17,836. Jurisdiction of this court is invoked because of the amount in dispute. Constitution of Missouri, 1945, Article V, Section 3, V.A.M.S. We will refer to the parties as they were designated in the court below. The case was tried to the court without a jury and will be reviewed upon the law and the evidence. Rule 73.01(d), Rules of Civil Procedure, V.A.M.R.

A written contract (plaintiff's Exhibit No. 1) was entered into between plaintiff and defendant by the terms of which plaintiff undertook the construction of highway projects in Lafayette and Saline Counties, Missouri, which consisted of resurfacing outer roadways of portions of Route I–70 with bituminous material.

The contract was awarded to plaintiff after defendant had advertised for and received sealed bids, plaintiff, of course, being the successful bidder.

The contract was awarded on a so-called "unit price basis," that is, the various items of work to be done were specified and identified in defendant's advertised proposals. A unit price with respect to each was bid by plaintiff, for example, "Binder (MC–1) thirteen cents per gallon." To arrive at the total compensation defendant agreed to pay and plaintiff agreed to accept the number of "units" which actually went into the construction project was to be multiplied by the unit prices bid.

Plaintiff does not complain that defendant failed to keep its part of the bargain with respect to this formula. Quite to the contrary, plaintiff contends it should be paid $17,836 in excess of the amount it contracted to accept for the work done because of unseasonable weather and because of an unforeseen condition of the surface of the outer roadways it contracted to resurface, it was obliged to incur expense for labor and equipment in that amount which it had not anticipated when it estimated and successfully bid the job.

The difficulty with plaintiff's position is that it assumed the hazard of unseasonable weather and assumed the obligation to become fully informed with respect to all conditions which might affect the execution of the construction project it undertook to perform.

Defendant's proposals, as well as Missouri Standard Specifications for State Roads, Materials, Bridges, Culverts and Incidental Structures, Edition of 1961, were specifically incorporated in and are a part of the contract plaintiff and defendant executed. An examination of the entire contract brings into focus its following provisions:

"The contractor (plaintiff) further agrees that he is fully informed regarding all of the conditions affecting the work to be done the labor and materials to be fur-

nished for the completion of this contract, and that his information was secured by personal investigation and research and not from any estimates of the Commission (defendant).

"All provisions of Section 4.2 relating to contract plan changes are by the engineer or Commission only, and the weather, physical or other conditions other than direct intentional change of plans are not considered to be an alteration as contemplated herein."

The record in this case does not support any contention, if indeed there be one, that any "contract plan changes" were made by defendant. It is true that as the work progressed two "change orders" were made by defendant increasing the number of "units" of MC–3 binder to be used in the project. Section 3 of each contained the statement:

"Settlement for cost of the above change to be made at contract unit prices, except as noted."

No exceptions were noted.

Each "change order" contained the signature of the plaintiff's agent under the words:

"To the Resident Engineer: The terms of settlement as outlined in paragraph 3 above, are hereby agreed to."

A fair construction of the contract compels the conclusion that the hazard of unfavorable weather conditions was one of the burdens assumed by plaintiff when it estimated and successfully bid the construction proposals of defendant. The same must be said of the condition of the surface of the outer roadways plaintiff contracted to resurface.

It is our conclusion from the record in this case that the plaintiff simply underestimated the cost of the work it contracted to perform and it is not within the prerogatives of this court to rewrite the contract the plaintiff voluntarily entered into.

Would anyone seriously contend that had weather conditions been more favorable than anticipated and had the condition of the surface of the outer roadways been such as to reduce plaintiff's labor and equipment expense, the defendant would have been entitled to a reduction in the amount it had contracted to pay plaintiff for the work performed?

The plaintiff was in no way compelled to enter into the undertaking it did; however, having done so, the plaintiff is bound by the plain terms and provisions of its written contract.

The result we are compelled to reach in this case is fully supported by the following Missouri appellate authority: Sager v. State Highway Commission, 349 Mo. 341, 160 S.W.2d 757; Sandy Hites Co. v. State Highway Commission, 347 Mo. 954, 149 S. W.2d 828; Spitcaufsky v. State Highway Commission, 349 Mo. 117, 159 S.W.2d 647. Cases cited by plaintiff-respondent either have no application to the facts disclosed by the record in this case or are clearly distinguishable.

The judgment is reversed and this cause is remanded to the trial court with directions to enter judgment in favor of the defendant.

HENLEY, C. J., and DONNELLY, SEILER, MORGAN, and HOLMAN, JJ., concur.

FINCH, J., concurs in result in separate concurring opinion filed.

BRADY, Special Judge, concurs in result and concurs in separate concurring opinion of FINCH, J.

STORCKMAN, J., not sitting.

FINCH, Judge (concurring).

I concur in the result reached in the principal opinion for the reasons herein stated.

Plaintiff's recovery was sought on the basis of alleged breach of contract by the State Highway Commission. Briefly stated, I understand its position to be this: The contract in question was for bituminous resurfacing of some outer roadways of I–70. The specifications called for plaintiff to tight blade the material on the existing roadway into a windrow and then to mix it with new rock furnished by the state. The resulting aggregate was then to be mixed with binder oil and spread on the roadway. The tight blading, which plaintiff says means to scrape up all loose material with the grader blade, did not produce enough material to add to the new stone and complete the resurfacing job. The state, instead of increasing the amount of new stone to be brought in, instructed plaintiff to undercut the existing material on the roadway. This resulted in much more dirt and dust being picked up and mixed into the aggregate. The result was that an overrun of 38% of binder oil was required to prepare the aggregate for spreading on the job. Plaintiff was paid for the additional oil furnished, but the presence of the dirt and dust plus the extra oil required much more handling and mixing, with resulting increased cost to the contractor.

Plaintiff's position is that defendant contracted that the material on the highway, when tight bladed, would produce sufficient aggregate, when mixed with the new rock furnished, to do the resurfacing job. Plaintiff says that when it did not produce enough material by tight blading but, instead, required plaintiff to undercut the roadway, resulting in excessive dirt and dust in the aggregate, the defendant breached said contract, for which it is liable.

Where the facts are such that the Highway Commission does breach a provision in its contract, or breaches a warranty in its plans and specifications on which the contractor is entitled to rely, plaintiff's position that the Commission can and should be liable for such breach of contract or breach of warranty is sound. Such an instance can be illustrated by the facts in a case which previously was appealed to this court but in which no opinion is reported for the reason that the case was settled and the appeal dismissed. In that case the contract called for construction by the contractor of a soil cement base and the specifications provided that the soil to be used in the preparation of the soil cement base should be "select material" taken from a borrow area specified in the plans and specifications. It was provided that the contractor first would remove the overburden from the borrow area to a certain depth, after which the "select material" was to be used in making soil cement. Actually, it developed that the "select material" under the overburden contained debris of various kinds, would not dry out properly and was not "select material". The contractor eventually obtained elsewhere the material which was used in building the soil cement base. Plaintiff then sought recovery on the theory of defendant's failure to furnish "select borrow material" as it had promised in its contract to do.

A fair interpretation of that contract was that the Commission had affirmatively and unequivocally represented the presence and promised the availability of "select material" lying beneath the overburden. Subsequently, when the overburden was removed, it developed that the representation as to the character of the material was incorrect because it was not "select material". Consequently, the Commission breached its contract.

The Commission there relied on the exculpatory provision from the standard specifications to the effect that the contractor had examined the site and relied on its own investigation rather than figures of the Commission. However, the facts were that there was not sufficient time from the advertisement for bids and the receipt of bids for a contractor to have taken samples and had the material tested to see whether it was or was not "select material". The provision for independent investigation was not reasonably capable of fufillment. Fur-

thermore, the positive representation as to conditions served to excuse failure to make tests. Under such circumstances, necessarily the contractor relied on the representation in the contract, and the Commission was not excused for its breach of contract simply because of the exculpatory provision in the standard specifications. In my view, if the Commission affirmatively represents or warrants matters on which the contractor is entitled to rely, and then breaches that representation, it is liable for such breach.

However, in this case I am unable to conclude that the evidence shows that the defendant did in fact contract and warrant that loose material tight bladed from the road surface would produce one-half of the amount of aggregate required for the resurfacing, or that defendant breached its contract when there was not enough material without the undercutting. For that reason, I conclude that a breach of contract on the part of the Commission, as contended for by plaintiff, was not shown by the evidence, and I therefore concur in the result reached in the principal opinion.